IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                           EASTERN DIVISION

Marsha K. Parenteau, et al.,

        Plaintiffs,

     v.                                    Case No. 2:07-cv-851

Century Bank,

        Defendant.


                            OPINION AND ORDER

     This is a diversity action filed by plaintiffs Marsha K. Parenteau, both in her individual capacity and as Successor Trustee of the 4500 Dublin Road Living Trust Dated April 8, 2003, and Thomas E. Parenteau against defendant Century Bank. The plaintiffs are citizens of Ohio, and defendant is a Florida corporation with its principal place of business in Florida. Plaintiffs allege in their complaint that on January 31, 2007, they obtained a residential mortgage loan from the defendant in the amount of twelve million dollars. Complaint, ¶ 12. Under the terms of the loan, three million dollars of the loan amount was to be used by plaintiffs to open a certificate of deposit account with the defendant. Complaint, ¶ 11. The loan was secured by a mortgage on the real property located at 4500 Dublin Road, Columbus, Ohio. Complaint, ¶ 9. Following the closing, a certificate of deposit in the amount of three million dollars was opened in plaintiffs' names at the defendant bank. Complaint, ¶ 17.

     Plaintiffs further allege that in May, 2007, defendant demanded that the plaintiffs transfer ownership of the certificate of deposit to the defendant, or, in the alternative, that the plaintiffs grant the defendant a security interest in the

certificate of deposit as security on the note.  Complaint, ¶ 21. Defendant repeated these demands on May 23, 2007, and plaintiffs refused to transfer ownership of the certificate of deposit. Complaint, ¶ 25.  Plaintiffs allege that on July 27, 2007, they were advised that the defendant had unilaterally changed the name on the certificate of deposit account to "Century Bank f/b/o Marsha K. or Thomas E. Parenteau, Marsha Parenteau as Success TTE Dublin Rd. Liv TR U/A/D 4-07-03" without plaintiffs' authorization. Complaint, ¶ 26.

In Count I of the complaint, plaintiffs assert a claim for breach of contract, alleging that defendant breached the loan agreement by taking possession of the certificate of deposit, thereby failing to provide plaintiffs with the full amount promised under the loan agreement.  In Count II of the complaint, plaintiffs assert a claim for conversion, alleging that the defendant unlawfully converted the certificate of deposit to its own use.  In Counts III and IV of the complaint, plaintiffs seek a declaratory judgment concerning the rights of the parties to the certificate of deposit and injunctive relief.  In Count V, plaintiffs assert a claim for unjust enrichment.

Defendant contends that plaintiffs agreed to maintain the three million dollars in the certificate of deposit until the loan principal had been paid down to nine million dollars.  Defendant alleges that after plaintiffs indicated that they intended to withdraw the three million dollars to use those funds as collateral for another loan, defendant changed the legal title of the account to freeze the account until the loan was paid down to nine million dollars.

2

This matter is before the court on the defendant's motion pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. §1391(a) to dismiss the complaint for improper venue, or in the alternative, to transfer this action to the United States District Court for the Central District of Florida pursuant to 28 U.S.C. §1406(a).

Venue in a diversity action is governed by 28 U.S.C. §1391(a), which provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Section 1391(a)(2) is the relevant provision here.

Section 1391(a)(2) was intended to broaden the former law governing venue in diversity cases. First of Michigan Corp. v. Bramlet, 141 F.3d 260, 263 (6th Cir. 1998); Sky Technologies Partners, LLC v. Midwest Research Institute, 125 F.Supp.2d 286, 290 (S.D.Ohio 2000). The fact that a majority of the acts, events or omissions giving rise to the claim occurred in some other district does not disqualify the district in which the action was filed so long as a substantial part of the acts, events or omissions giving rise to the claim also occurred in the district of filing. Bramlet, 141 F.3d at 263; Amphion, Inc. v. Buckeye Elec. Co., 285 F.Supp.2d 943, 646 (E.D.Mich. 2003)(§1391(a)(2) does not require venue in the district with the most substantial contacts to the dispute; it is sufficient if a substantial part of the events

occurred in the challenged venue, even if a greater part of the events occurred in another district).  A plaintiff may file his complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose, including any forum "with a substantial connection to the plaintiff's claim."  Bramlet, 141 F.3d at 263.  Venue must be proper for each claim. Costaras v. NBC Universal, Inc., 409 F.Supp.2d 897, 907 (N.D.Ohio 2005).

Relying on Gaines, Emhof, Metzler & Kriner v. Nisberg, 843 F.Supp. 851, 854 (W.D.N.Y. 1994) and KPWare, Inc. v. Meade, 79 F.Supp.2d 1007, 1016-17 (E.D.Wis. 2000), defendant argues that this court is permitted to consider only the acts of the defendant in determining whether a substantial part of the events or omissions giving rise to the claim occurred in this district.  See also Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995).  However, the First Circuit has rejected this narrow approach, and has declined to consider only the acts of the defendant.  See Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 n. 6 (1st Cir. 2001).

The narrow approach advocated by the defendant was also implicitly rejected by the Sixth Circuit in Bramlet.  In that case, the plaintiffs, a Michigan bank and a Michigan investment advisor, filed an action in the district court in Michigan seeking to enjoin an arbitration action which the defendant investors (plaintiffs' clients) had filed in Florida.  In the arbitration action, the defendant investors alleged that the plaintiffs failed to provide them with statements concerning their IRA account, thereby concealing the losses to the account.  The district court dismissed the Michigan action for improper venue, reasoning that plaintiffs' case was not based on the plaintiffs' handling of defendants'

4

investments in Michigan, and that the only event triggering plaintiffs' action was the defendants' filing of the arbitration proceeding in Florida. The Sixth Circuit held that the district court misapplied §1391(a)(2) in basing its determination of improper venue on "a single occurrence [the defendants' filing of the arbitration complaint] which directly gave rise to the plaintiffs' action, rather than considering whether the forum the plaintiffs chose had a substantial connection to their claim." Bramlet, 141 F.3d at 264. The court noted that most of the transactions relating to the defendants' investments took place in Michigan or resulted from contact the defendants had with the investment advisor in Michigan. Id. The court concluded that venue was proper in Michigan "where the underlying transactions and investments took place[.]" Id. See also Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004)(in determining whether venue is proper, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action, but rather should review the entire sequence of events underlying the claim); Uffner, 244 F.3d at 42 (the district court must look "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim.").

In the context of an action for breach of contract, courts making venue determinations have looked to such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred. Gulf Insurance Co. v. Glasbrenner, 417 F.3d 353, 357 (2nd Cir. 2005). In MCNIC Oil & Gas Co. v. IBEX Resources Co., L.L.C., 23 F.Supp.2d 729, 739 (E.D.Mich. 1998), an action for breach of contract and breach of

5

fiduciary duty, the court concluded that the fact that the negotiation and execution of the contracts occurred in Michigan satisfied the "substantial part" requirement of the venue statute. See also Cobasys, L.L.C. v. FMP Resistance Welding Supply, Inc., No. 07-13736 (unreported), 2008 WL 162588 at *3 (E.D.Mich Jan. 17, 2008)(venue for breach of contract action was proper where contracts were negotiated and awarded in Michigan, purchase orders were issued in Michigan, and the effects of defendant's alleged breach of contract were suffered by plaintiff in Michigan); Geostar Corp. v. Gaster Exploration Ltd., No. 07-12854-BC (unreported), 2008 WL 161902 at *12 (E.D.Mich. Jan. 15, 2008)(the negotiation of the contract in Michigan was a substantial event where the contract terms and the intent of the parties would likely be at the center of plaintiff's breach of contract claim); Northwest Ventures Inc. v. Purewal Enterprises Pvt., Ltd., No. 3:06CV-420-H (unreported), 2007 WL 101846 at *2 (W.D.Ky. Jan. 8, 2007)(venue was proper in Kentucky for breach of contract action where the negotiation of the contract occurred at least in part in Kentucky).

In support of its motion, defendant has submitted the affidavit of Mary Ouellette, Vice President and Corporate Relationship Manager of Century Bank. She states that the certificate of deposit account at issue in this action is located in defendant's place of business in the Central District of Florida, and that the funds in question have been in that account since being deposited on or about February 9, 2007. Ouellette Aff., ¶¶ 5, 6. She further states that the change in legal ownership of the account took place in Florida. Ouellette Aff., ¶¶ 8, 9. Defendant further notes that the letter advising plaintiffs

of the change in ownership of the account originated in Florida, that the deposit is governed by Florida regulations, and that, if plaintiffs prevail, the transfer of the account back into plaintiffs' names would occur in Florida.

In response, plaintiffs have submitted the affidavit of Thomas Parenteau. Mr. Parenteau states that plaintiffs submitted their residential loan application to defendant through a mortgage broker located in Westerville, Ohio, and that the negotiations for the terms of the loan were conducted through the Ohio mortgage broker. Mr. Parenteau also negotiated directly with defendant from Ohio. Parenteau Aff., ¶ 3. The loan was closed at the offices of a title company located in Westerville, Ohio. The residential mortgage created an interest in real property located at 4500 Dublin Road, Columbus, Ohio. Parenteau Aff., ¶ 4. Westerville, Ohio, and Columbus, Ohio, are located in the Southern District of Ohio. Mr. Parenteau further states that defendant sent requests to plaintiffs in Ohio to negotiate signature cards transferring the ownership of the certificate of deposit to the defendant and to grant defendant a security interest in the account. Parenteau Aff., ¶¶ 6, 7. Defendant also sent correspondence to plaintiffs in Ohio notifying them of the change in ownership of the account. Parenteau Aff., ¶ 8. Mr. Parenteau states that plaintiffs never traveled to defendant's Florida offices in connection with the loan transaction. Parenteau Aff., ¶ 9.

This court finds that the Southern District of Ohio has a substantial connection to the plaintiffs' claims. See Bramlet, 141 F.3d at 263. To prevail on their breach of contract claim, plaintiffs will be required to prove the existence of the contract

and that it establishes their right to ownership in the certificate of deposit. The record shows that the loan application was submitted to defendant using the services of a mortgage broker located in Ohio, and that negotiations for the loan agreement, which may be relevant to show intent of the parties regarding contract terms, also occurred in Ohio. The loan is secured by real property located in Ohio. Thus, a substantial part of the entire sequence of events underlying plaintiffs' claim for breach of contract occurred in Ohio. Although the alleged conversion of the certificate of deposit account occurred physically in Florida, plaintiffs' conversion and unjust enrichment claims are based on the same predicate events and circumstances as the breach of contract claim. The effects of the financial loss of the three million dollars held in the certificate of deposit caused by defendant's allegedly improper transfer of ownership were felt by plaintiffs in Ohio.

The court concludes that a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in the Southern District of Ohio, and that venue here is proper. Defendant's motion to dismiss for improper venue (Doc. No. 6) is denied.

Defendant also summarily contends that venue should be transferred to Florida pursuant to 28 U.S.C. §1404(a), which governs a change of venue for the convenience of the parties and witnesses. However, defendant has provided little in the way of facts or argument to support this branch of its motion, and the court does not have sufficient information to make a ruling. Therefore, this branch of defendant's motion is denied without

prejudice.


Date: January 31, 2008             s\James L. Graham
                         James L. Graham
                         United States District Judge

9