UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Marsha K. Parenteau, et al.,

    Plaintiffs,

-v-                                                  Case No. 2:07–cv–851

Iberia Bank, N.A.,                         Judge Michael H. Watson

    Defendant.

## OPINION AND ORDER

Plaintiffs assert common law claims for breach of contract and conversion, seeking damages as well as declaratory relief. Defendant asserts counterclaims and third party claims for fraud and violation of the Racketeering Influenced and Corrupt Practices Act ("RICO), 18 U.S.C. § 1962(c), and likewise seeks monetary damages and declaratory relief. Defendant now moves unopposed for summary judgment in its favor with respect to Plaintiffs' claims against it as well as liability on its own claims against the opposing parties. ECF No. 183. For the following reasons, the Court grants Defendant's motion and refers the matter to the Magistrate Judge to conduct a hearing and issue a report and recommendation on the amount of Defendant's damages.

## I. FACTS

### A. The Parties

Plaintiffs and Counterclaim Defendants are Thomas ("Tom") Parenteau and his wife, Marsha Parenteau. Marsha asserted claims in her individual capacity and as trustee of the 4500 Dublin Road Living Trust Dated April 8, 2003 ("Trust").

The original Defendant and Counterclaim Plaintiff was Century Bank, a Florida corporation. In November 2009, the Office of Thrift Supervision took over Century Bank and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. The FDIC then transferred some of Century Bank's assets, including the note and mortgage at issue in this case, to IberiaBank, N.A. ("IberiaBank") making IberiaBank the successor in interest to Century Bank. The Court granted IberiaBank's motion for substitution of party, and IberiaBank now proceeds as the Defendant and Counterclaim Plaintiff in this matter.

IberiaBank also names Dennis Sartain as a third party defendant for his role in the transaction at issue. Sartain worked for Plaintiffs by providing them, among other things, accounting services.

### B. The Loan Application

In a recent decision in a related case, the United States Court of Appeals for the Sixth Circuit aptly observed that Tom Parenteau and his numerous co-conspirators "engaged in a lucrative mortgage fraud scheme." *United States v.*

*Marsha Parenteau*, No. 12-3015, 2012 WL 5896561, at * 1 (6th Cir. Nov. 26, 2012). "They made millions of dollars using fake documents to obtain ever-larger loans against their personal residences. They also built luxury homes, sold them at well-above-market prices, and handed out kickbacks to buyers before laundering the proceeds. The architect of this scheme was Thomas Parenteau . . . ." *Id.* Part of Tom Parenteau's scheme entailed the $12 million loan from Century Bank that gave rise to the present civil lawsuit.

In April 2003, Tom and Marsha Parenteau, through the 4500 Dublin Road Living Trust, purchased residential property located at 4500 Dublin Road for $1.84 million. Marsha provided $600,000 for the purchase, and MKP Investment, LLC ("MKP"), a company she then nominally owned, provided the remaining $1.24 million. Although Marsha provided the capital to purchase the property, Marsha understood Tom Parenteau to be the beneficial owner of 4500 Dublin Road. Moreover, Tom Parenteau controlled MKP.

In 2006, after obtaining several other loans on the property, Plaintiffs sought to refinance 4500 Dublin Road. To that end, during 2006 and 2007, Plaintiffs provided information to Century Bank in connection with the loan application process. As part of that process, Plaintiffs submitted a letter to Century Bank which asserted the Parenteaus had a monthly income of $596,287, and that they had made $6.5 million in improvements to the property. The letter also purported to show Plaintiffs' net assets as of April 20, 2006, totaling $22.9

million. Plaintiffs represented the information supplied for the application was "true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages . . . and/or criminal penalties." Ex. B(6). Further, Plaintiffs represented that Century Bank could "rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts I have represented herein should change prior to closing of the Loan." *Id*. At their depositions in this case, Plaintiffs refused on Fifth Amendment grounds to answer any questions about the letter, including whether the information in the letter was accurate or whether they knew the information was false when they provided it to Century Bank.

  Third Party Defendant Dennis Sartain also provided documents to Century Bank in support of the loan application. In a letter which he prepared as part of Plaintiffs' loan application, Mr. Sartain asserted he was a Certified Public Accountant ("CPA") who had worked with the Parenteaus since 2001. In fact, Mr. Sartain had not been a CPA since 2000. Mr. Sartain claimed in the letter to be familiar with the financial affairs of the Parenteaus with respect to the 4500 Dublin Road property, and provided financial statements which he claimed reflected the actual amounts expended at the property. For example, Mr. Sartain's documents showed the Parenteaus had a combined net worth of over $24 million. That

representation was false.

Mr. Sartain testified the information provided in connection with the application was not accurate as to "income" in any sense of the word and instead was a summary of all non-transfer bank deposits into Plaintiffs' several accounts. He said, "I would not label what I described in my summation to be income." Sartain Dep. 108. Mr. Sartain further stated, "[t]his number [i.e. the $596,287 monthly income] is false," and indicated it was a fraud to suggest to Century Bank that it was the Parenteau's income without clarifying that the number actually reflected only bank deposits. Sartain Dep. 108–09. Mr. Sartain also testified that the $6.5 million in renovation costs claimed by Plaintiffs was not actually the cost of improvements but was instead a value which Tom Parenteau "said was the fair market value of services provided during that time period." *Id.* at 71, 81. The "schedule" claimed expenses much higher than were reported on Plaintiffs' tax returns. *Id.* at 72, 75. Sartain additionally testified he estimated the total costs reported to Century Bank were potentially double the actual costs incurred. *Id.* at 89.

In addition to the uncontroverted evidence set forth above, the Court takes judicial notice of the criminal proceedings against Tom Parenteau, Marsha Parenteau, and Dennis Sartain.[1] Fed. R. Evid. 201(c)(1). Marsha Parenteau pleaded guilty to conspiracy to commit money laundering, namely, laundering the

---

[1] The undersigned presided over all of those criminal proceedings.

proceeds of the loan application fraud. The statement of facts submitted with her plea agreement included that false statements were made in the application for the loan from Century Bank. Marsha is currently serving her sentence of imprisonment on that charge, and the Sixth Circuit Court of Appeals recently affirmed her sentence. *Marsha Parenteau*, 2012 WL 5896561, at * 1, 3.

The Court also takes judicial notice that in July 2010, a jury found Tom Parenteau guilty of conspiracy to commit money laundering in connection with loan application fraud. *United States v. Thomas Parenteau*, Case No. 2:08–cr–180(1), PAGEID #s 1997–2009, ECF No. 256. The loan application fraud count included the false statements and financial information used in the application to obtain the $12 million refinancing loan from Century Bank for the 4500 Dublin Road property. *Id.*, PAGEID # 805, ECF No. 96. Dennis Sartain pleaded guilty to the same count of conspiracy to commit money laundering. *United States v. Dennis Sartain*, 2:08–cr–180(2).

## B. The $3 Million Certificate of Deposit

As part of the loan negotiations, the parties agreed Plaintiffs would be required to keep $3 million of the loan proceeds in a CD at the bank until the loan was paid down by $3 million or paid off entirely. Marsha Parenteau acknowledged the $3 million CD was a subject of extensive negotiation between the parties up to closing.

At closing, Plaintiffs signed two documents which reflected the parties' agreement with respect to the $3 million CD. First, Plaintiffs signed the Commitment Letter Agreement which contained their agreement regarding the $3 million CD. That document provided, "Borrower to open $3,000,000.00 CD with Century Bank. Proceeds will be frozen and not accessible to borrower until loan paid down by $3,000,000 or paid off." Loan Commitment Addendum, PAGEID # 2052, ECF No. 183-3. Second, Plaintiffs signed the HUD Settlement Statement at closing, which likewise reflected that $3 million of the loan proceeds would be deposited in a CD at Century Bank and remain frozen until the loan was paid down by the amount of the CD or paid off entirely. HUD Settlement Statement Addendum, PAGEID # 2059–60. ECF No. 184-4.

The parties' actions after closing confirm their agreement concerning the $3 million CD. In accordance with their agreement, the $3 million was withheld from the loan proceeds to create the $3 million CD. Plaintiffs do not dispute they never possessed those funds, and the funds never left Century Bank's possession before being placed into the CD.

## C. Procedural Background

This is the second of numerous civil and criminal cases related to Thomas Parenteau's extensive fraudulent schemes.[2] Plaintiffs filed the present diversity

---

[2]The other cases include:
(1) *United States v. Dennis Sartain*, Case No. 2:07–cr–88 (indictment filed April 11, 2007);

action on August 24, 2007, asserting, *inter alia*, Century Bank wrongfully prevented them access to the funds in the $3 million CD. ECF No. 1. Plaintiffs advanced claims under common law theories of breach of contract, conversion, and unjust enrichment, seeking relief in the form of damages, declaratory judgment, and preliminary and permanent injunctions. *Id.* Century Bank moved to transfer or dismiss on the basis of improper venue. ECF No. 6. The Court denied that motion in January 2008. ECF No. 10. Century Bank then filed its answer to the complaint as well as a counterclaim for breach of contract, seeking declaratory relief and damages. ECF No. 12. After additional motions practice

---

(2) *United States v. Rebecca Sayre*, Case No. 2:08–cr–16 (information filed January 30, 2008);
(3) *United States v. Jana Reardon*, Case No. 2:08–cr–17 (information filed January 30, 2008);
(4) *United States v. Pamela McCarty*, Case No. 2:08–cr–148 (information filed July 16, 2008);
(5) *United States v. William Tarcy*, 2:08–cr–184 (indictment filed September 18, 2008)
(6) *United States v. Marsha Parenteau*, 2:09–cr–97 (information filed April 21, 2009);
(7) *United States v. Lance Parker*, Case No. 2:09–cr–98 (information filed April 21, 2009);
(8) *United States v. Todd Gongwer*, 2:09–cr–99 (information filed April 21, 2009);
(9) *United States v. Thomas Parenteau, Dennis Sartain, and Bonnie Helt*, Case No. 2:08–cv–180 (indictment filed September 16, 2008);
(10) *JPMorgan Chase Bank, N.A. v. MKP Investments LLC*, Case No. 2:09–cv–421 (complaint filed May 28, 2009);
(11) *Reliastar Life Ins. Co. v. MKP Investments LLC*, Case No. 2:09–cv–700 (complaint filed August 10, 2009);
(12) *John Hancock Life Ins. Co. v. MKP Investments LLC*, Case No. 2:09–cv–707 (complaint filed August 10, 2009);
(13) *Principal Life Ins. Co. v MKP Investments LLC*, 2:09–cv–718 (complaint filed August 10, 2009;
(14) *United States v. Jeffrey Parenteau*, Case No. 2:10–cr–251 (information filed September 24, 2010).

and discovery, Century Bank filed a second amended answer, adding Dennis Sartain and adding fraud and RICO claims against Plaintiffs and Sartain. ECF No. 89.

The criminal actions initiated in 2009 against Plaintiffs and Sartain went forward. In light of Plaintiffs' and Sartain's Fifth Amendment concerns, the Court stayed the instant case on December 4, 2009 pending the outcome of the criminal matters. ECF No. 117. The Court lifted the stay on November 18, 2010. The Magistrate Judge thereafter issued a revised pretrial schedule pursuant to which IberiaBank filed its motion for summary judgment on July 16, 2012. That motion remains unopposed.

## II. SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). See also *Van Gorder v. Grand Trunk Western R.R., Inc.*, 509 F.3d 265 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all

reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 587 (1986); *Pittman v. Cuyahoga Cnty. Dept. of Children and Family Serv.*, 640 F.3d 716, 723 (6th Cir. 2011). The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman*, 640 F.3d at 723 (quoting *Anderson*, 477 U.S. at 251–52).

> When, as here, the motion is unopposed, the Court "must review carefully those portions of the submitted evidence designated by the moving party." *Guarino* [*v. Brookfield Township Trustees*], 980 F.2d [399,] 410 [(6th Cir. 1982)]. The Court will not, however, "sua sponte comb the record" from Defendants' perspective. *Id.* Instead, the Court may reasonably rely on Plaintiffs' "unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from

> evidence demonstrate facts which are 'uncontroverted.' " *Id*. If such evidence supports a conclusion that there is no genuine issue of material fact, the Court should determine that Plaintiffs have carried their burden, and "judgment [ ] shall be rendered forthwith...." *Id*., quoting Fed. R. Civ. P. 56(c).

*Mongan v. Lykins*, No. 1:09–cv–626, 2010 WL 2900409, at *3 (S.D. Ohio July 21, 2010).

## III. DISCUSSION

### A. Plaintiffs' Claims against IberiaBank

IberiaBank moves for summary judgment with respect to Plaintiffs' claims, which include breach of contract and conversion. IberiaBank asserts both claims fail because: (1) the undisputed evidence, including the loan documents, establishes the parties agreed Century Bank would withhold $3 million of the loan proceeds in a CD under its control; (2) Plaintiffs have failed to submit evidence to support their claims as required by Federal Rule of Civil Procedure 56(c); and (3) Plaintiffs did not suffer damage as a result of Century Bank's actions.

To prevail on a breach of contact claim under Ohio law, a plaintiff must demonstrate: "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012).

Ohio law requires a plaintiff to prove three elements to succeed on a claim for conversion: "(1) plaintiff's ownership or right to possession of the property at

the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *City of Findlay v. Hotels. Com, L.P.*, 441 F. Supp. 2d 855, 865 (N.D. Ohio 2006).

The documents IberiaBank submits with its summary judgment motion establish as a matter of law that the parties agreed Century Bank would create a $3 million CD, the proceeds of which "will be frozen and not accessible to borrower until the loan is paid down by $3,000,000 or paid off." Loan Commitment Addendum, PAGEID # 2052, ECF No. 183-3; *see also* HUD Settlement Statement Addendum, PAGE ID # 2059–60, ECF No. 183-4 ("Borrower to open $3,000,000 CD with Century Bank. Proceeds will be frozen and not accessible to borrower until loan paid down by $3,000,000 or paid off (PROCEEDS HAVE BEEN WITHHELD FROM CENTURY BANK WIRE)"). These documents, signed by both Tom and Marsha Parenteau, unmistakably show the parties' intent concerning the disputed CD. Plaintiffs offer no evidence to the contrary and have therefore failed to meet their burden to demonstrate a genuine issue of material fact as required under Rule 56(c). In addition, as IberiaBank suggests, Plaintiffs did not suffer any damage as a result of Century Bank's refusal to release the funds in the CD because the entire $3 million was ultimately credited to their account. For all of these reasons, Plaintiffs' claims for breach of contract and conversion fail as a matter of law. Accordingly, IberiaBank is entitled to summary judgment in its favor on Plaintiffs' claims against it.

## B. IberiaBank's Claims against Plaintiffs and Sartain

IberaBank also moves for summary judgment with respect to its fraud and RICO claims against the opposing parties. IberiaBank asserts the uncontested evidence demonstrates as a matter of law each element of its claims.

### 1. Fraud

To succeed on a common law claim of fraud in Ohio, the plaintiff must establish:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Lee v. Countrywide Home Loans,* Inc., 692 F.3d 442, 449 (6th Cir. 2012); (quoting *Gaines v. Preterm–Cleveland, Inc.*, 33 Ohio St. 3d 54, 514 N.E.2d 709, 712 (1987)).

Here, the undisputed evidence shows Plaintiffs falsely overstated their income, sources of that income, their assets, and the value of the repairs made to the property. Hence, the element of falsity is met. It is beyond argument that the types of misrepresentations Plaintiffs made—income, assets and value of repairs—went to the heart of the decision to extend the loan. IberiaBank

therefore satisfies the materiality element. Moreover, Dennis Sartain's testimony suggests the representations were made out of whole cloth. It is therefore more than reasonable to infer Plaintiffs well understood the falsity of their statements and intended to deceive Century Bank. To the extent any doubt remains, it is dispelled by Plaintiffs' criminal convictions for the very transaction from which the instant case arises.

With the benefit of hindsight, it would be tempting to hold Century Bank to a higher standard of inquiry in making such a substantial loan, in this instance $12 million. Indeed, the same could be said of the entire financial industry during that era. Nonetheless, the absence of concrete evidence that greater diligence would have prevented the fraud, and based on the undisputed evidence submitted by IberiaBank, the Court finds Century Bank's reliance on Plaintiffs' representations to have been justifiable as a matter of law.

In sum, Iberia bank has adduced evidence satisfying all of the essential elements of its common law fraud claims, and Plaintiffs and Sartain have failed to offer any evidence to the contrary. Accordingly, the Court holds IberiaBank is entitled to summary judgment in its favor on the issue of liability for fraud.

### 2. RICO

It is rare for a party even to plead a RICO claim properly, let alone successfully prove one. This, however, is that rare case where all of the elements of a RICO claim are met. IberiaBank brings its civil RICO claim under

18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

*Id.* Any person injured by a violation of § 1962(c) may bring a civil action under that section to recover treble damages, attorney's fees, and costs. 18 U.S.C. § 1964(c). To plead a civil RICO claim under § 1962(c), a plaintiff must allege: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006).

> A plaintiff must set forth allegations to establish that the defendant conducted or participated, "directly or indirectly, in the conduct of [the RICO] enterprise's affairs." 18 U.S.C. § 1962(c). In *Reeves v. Ernst & Young*, the Supreme Court held that participation in the conduct of an enterprise's affairs requires proof that the defendant participated in the "operation or management" of the enterprise. 507 U.S. 170, 183 (1993). RICO liability is not limited to those with primary responsibility for the enterprise's affairs; only "some part" in directing the enterprise's affairs is required. *Id.* at 179. However, defendants must have "conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Id.* at 185 (emphasis in original).

*Ouwinga*, 694 F.3d at 791–92. An "enterprise" is "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals

associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

> In order to establish the existence of an "enterprise" under § 1962(c), a plaintiff is required to prove: (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged.

*Ouwinga*, 694 F.3d at 793.

RICO also requires a plaintiff to demonstrate "a pattern of racketeering activity." 18 U.S.C. § 1962(c). The "pattern" requirement has two elements: relationship and continuity. *Ouwinga*, 694 F.3d at 795. Predicate criminal acts are related if they have "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). The continuity prong of the test is satisfied by demonstrating either "a 'close-ended' pattern (a series of related predicate acts extending over a substantial period of time) or an 'open-ended' pattern (a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed)." *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 409–10 (6th Cir.2012).

MKP Investments LLC qualifies as a RICO "enterprise." Specifically, MKP operated as a holding company for all of Tom and Marsha Parenteau's other

businesses, and was an ongoing organization for carrying out the numerous fraudulent schemes of Tom Parenteau and his co-conspirators. Indeed, MKP served as a conduit for all of Tom Parenateau's business activities, criminal and otherwise. Moreover, its members had established duties. Tom led the enterprise, while Marsha dutifully signed false documents. Sartain created false documents and assisted the enterprise by providing accounting services. Other co-conspirators, some of whom are named in the cases listed in footnote 2, *supra*, had various other duties in the schemes of the enterprise. Moreover, as an Ohio limited liability company corporation, MKP existed as a separate legal entity apart from the pattern of unlawful activity.

The pattern requirement, often the most difficult to satisfy, is met here. For purposes of racketeering, the predicate offenses consist of, *inter alia*, conspiracy to commit money laundering along with the attendant individual transactions involving loan application fraud, including the loan at issue in the present controversy. The relationship prong is satisfied, as the loan application fraud undeniably entailed "similar purposes, results, participants, victims, [and] methods of commission . . . ." *H.J. Inc.*, 492 U.S. at 240.

With respect to the continuity prong, the scheme involved a series of discrete instances of loan application fraud against several different lending institutions that spanned from about April 2003 to about September 2008. Furthermore, as indicated above, MKP was the conduit for a vast array of Tom

Parenteau's unlawful activity. That conduct went far beyond the money laundering conspiracy, and included, *inter alia*, bank and wire fraud connected to other properties and numerous specific instances of money laundering stemming from those schemes. The broad range of criminal activities constitute additional predicate offenses and further support a finding that Plaintiffs, Sartain, and others engaged in a pattern of racketeering activity. Lastly, given Tom Parenteau and his compatriots subsisted off their criminal schemes, it seems reasonable to infer the criminal activity would have continued but for the criminal prosecutions. Viewed together, these facts readily satisfy the continuity requirement. *See Ouwinga*, 694 F.3d at 795–96 (five years of consistent predicate acts satisfied continuity requirement); *Matthews v. Baumhaft*, No. 06-11618, 2007 WL 926050, at *4 (E.D. Mich. Mar. 28, 2007) (RICO pattern requirement met in factually similar scheme involving, *inter alia*, overvaluing property to obtain loans and money laundering occurring over period of four years).

For the above reasons, the Court grants summary judgment in IberiaBank's favor on its civil RICO claim.

## IV. DISPOSITION

Based on the above, the Court **GRANTS** IberaBank's motion for summary judgment. ECF No. 183. Accordingly, the Court **DISMISSES** Plaintiffs' claims against IberiaBank **WITH PREJUDICE.** Further, the Court enters judgment in favor of IberiaBank, and against Plaintiffs and Sartain, as to liability on

IberiaBank's RICO and fraud claims.  Finally, the Court **REFERS** this matter to the United States Magistrate Judge to conduct a hearing, if necessary, and issue a report and recommendation on the amount of IberiaBank's damages.  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(B).

      **IT IS SO ORDERED.**

*/s/ Michael H. Watson*
MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT