IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARSHA K. PARENTEAU,** *et al.***,**

       Plaintiffs,

  vs.                                            Civil Action 2:07-CV-851
                                                    Judge Watson
                                                    Magistrate Judge King

**CENTURY BANK, A FLORIDA
CORPORATION,**

       Defendant.

**REPORT AND RECOMMENDATION**

     This matter is before the Court on defendant IberiaBank, N.A.'s *Motion for Award of Damages*, Doc. No. 193, and *Supplemental Affidavit in Support of its Motion for Award of Damages* ("*Supplemental Affidavit*"), Doc. No. 198.  IberiaBank seeks an award of damages against counterclaim defendants Thomas Parenteau and Dennis Sartain ("Sartain") in the amount of $36,097,407.48.[1]  Despite opportunity to do so, Thomas Parenteau and Sartain have made no response to either the *Motion for Award of Damages* or the *Supplemental Affidavit*.  For the reasons that follow, it is **RECOMMENDED** that IberiaBank's *Motion for Award of Damages* be **GRANTED** in part and **DENIED** in part.

**I.    Background**

     Plaintiffs Thomas Parenteau and Marsha Parenteau instituted this action against Century Bank, A Florida Corporation ("Century Bank") in

---

[1] The *Motion for Award of Damages* seeks a total award of $36,097,412.31.  *See Motion for Award of Damages*, pp. 1-2.  The *Supplemental Affidavit* corrected a purported miscalculation in attorneys' fees that resulted in a $4.83 reduction in the original amount sought.  *See Supplemental Affidavit*, p. 2 n.1.

August 2007, alleging claims of breach of contract, conversion, and unjust enrichment and seeking relief in the form of damages, declaratory judgment, and preliminary and permanent injunctions. *Complaint*, Doc. No. 2, pp. 1, 7, 9.  Marsha Parenteau asserted claims on her own behalf and on behalf of the 4500 Dublin Road Living Trust Dated April 8, 2003 (the "Trust"). *Id.*  Century Bank thereafter asserted counterclaims and third party claims against Marsha Parenteau, in her individual and representative capacity, Thomas Parenteau, and Sartain for breach of contract, conversion, unjust enrichment, fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). *See Second Amended Counterclaim Against All Plaintiffs and Third Party Complaint Against New Third Party Defendants*, Doc. No. 89.

IberiaBank is the successor in interest to Century Bank and was substituted for Century Bank in November 2010. *Order*, Doc. No. 124, p. 2.

The parties' claims arise out of a $12 million mortgage loan (the "Loan") made by Century Bank in 2007 to the Trust and secured by the residence and real property located at 4500 Dublin Rd., Columbus, Ohio 43211, Parcel Nos. 200-000358 and 200-003079 (the "Property"). *See Opinion and Order*, Doc. No. 187, pp. 2-7.  The Property was purchased by plaintiffs Thomas and Marsha Parenteau through the Trust in 2003 and refinanced with the Loan. *Id.* at p. 3.  The Loan required that, *inter alia*, plaintiffs deposit $3 million of the Loan proceeds in a certificate of deposit with Century Bank until the Loan was paid down by $3 million or paid off. *Id.* at pp. 6-7.  Plaintiffs' claims of

2

breach of contract, conversion, and unjust enrichment were all premised on the bank's alleged wrongful conversion of the certificate of deposit and failure to distribute the full amount of the Loan proceeds. *See Complaint*, pp. 7-9. The counterclaims and third party claims are premised on, *inter alia*, Thomas and Marsha Parenteau and Sartain's representations made in connection with the Loan application and the failure to pay the Loan according to its terms.

Criminal proceedings relating to the Loan application were brought against Thomas Parenteau, Marsha Parenteau, and Sartain. Marsha Parenteau pleaded guilty to conspiracy to commit money laundering, namely, the proceeds of the Loan application, in violation of 18 U.S.C § 1956(h). *See United States v. Parenteau*, No. 12-3015, 2012 WL 5896561, at *1-3 (6th Cir. Nov. 26, 2012). In July 2010, a jury found Thomas Parenteau guilty of conspiracy to commit money laundering in connection with the Loan application; *see United States v. Thomas Parenteau*, Case No. 2:08-cr-180(1) (S.D. Ohio 2008), Doc. No. 256, at *PAGEID* 1997-2009; and Sartain pleaded guilty to the same count of conspiracy to commit money laundering, *see United States v. Dennis Sartain*, 2:08-cr-180(2) (S.D. Ohio 2008).

On January 27, 2011, judgment was entered in favor of IberiaBank and against Thomas Parenteau and Marsha Parenteau on Count One (money judgment for default on the note and mortgage) and Count Two (foreclosure) of the *Third Amended Counterclaim Against all Plaintiffs and Third Party Complaint Against New Third Party Defendants* ("*Third Amended Counterclaim*"), Doc. No. 111. *Consent Judgment*, Doc. No. 143. The Property was ordered sold at a foreclosure sale, *Consent Judgment*,

3

Doc. No. 143, p. 3, and the Court appointed a Special Master for that purpose. *Order Appointing Special Master*, Doc. No. 148.

IberiaBank purchased the Property at an April 19, 2012 public sale for a credit bid of $3,222,222.22. *Amended Order of Confirmation of Sale Nunc Pro Tunc*, Doc. No. 196; *Order of Confirmation of Sale*, Doc. No. 182. The sale was confirmed and approved by the Court on June 13, 2012. *Amended Order of Confirmation of Sale Nunc Pro Tunc*, Doc. No. 196; *Order of Confirmation of Sale*, Doc. No. 182.

Marsha Parenteau and IberiaBank settled their claims and, on July 18, 2012, the Court dismissed "with prejudice all claims and counterclaims between Marsha Parenteau and IberiaBank and dismisse[d] Marsha Parenteau from this lawsuit with prejudice." *Order*, Doc. No. 184. Marsha Parenteau resigned as trustee of the Trust on January 14, 2011, and was substituted by Thomas Parenteau as the trustee for the Trust on May 2, 2013. *Order*, Doc. No. 199.

IberiaBank moved for summary judgment on plaintiffs' claims against it and on its fraud and RICO claims against plaintiffs and Sartain. *Defendant IberiaBank's Motion for Summary Judgment*, Doc. No. 183. On February 5, 2013, the Court granted IberiaBank summary judgment on all of plaintiffs' claims and on its fraud and RICO claims against plaintiffs and Sartain and referred this matter to the undersigned for a recommended determination of IberiaBank's damages. *Id*. at pp. 12, 14, 18-19.

Pursuant to the Court's February 7, 2013 *Order*, Doc. No. 190, IberiaBank filed its *Motion for Award of Damages* on March 11, 2013. IberiaBank filed the *Supplemental Affidavit* in support of its *Motion*

4

*for Award of Damages* on May 1, 2013.  IberiaBank seeks an award of damages on its RICO and fraud claims against Thomas Parenteau and Sartain in the amount of $36,097,407.48, consisting of $27,048,189.39 in treble damages, $30,721.00 in attorneys' fees, $2,433.96 in costs, and $9,016,063.16 in punitive damages.  *Motion for Award of Damages*, pp. 1-2.  As noted *supra*, Thomas Parenteau and Sartain have not responded to the *Motion for Award of Damages* or the *Supplemental Affidavit*.

**II.  Discussion**

Under 18 U.S.C. § 1964(c), a party prevailing on a RICO claim is entitled to treble damages and costs of the RICO suit, including reasonable attorney fees.  *See* 18 U.S.C. § 1964(c) (a private party prevailing on a RICO claim "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee"); *Brown v. Cassens Transport Co.*, 675 F.3d 946, 966 (6th Cir. 2012).

IberiaBank was granted summary judgment on the RICO claim because Thomas Parenateau, Marsha Parenateau, and Sartain, acting through the enterprise MKP Investments, LLC, perpetrated a pattern of loan application fraud against several different lending institutions.  *See Opinion and Order*, Doc. No. 187, pp. 16-18.  The Loan application and the Property at issue in this action are but one instance in Thomas Parenateau, Marsha Parenateau, and Sartain's five year string of racketeering activity.  *See id*. at p. 17.

In January 2011, the parties stipulated that,

> [u]nder the terms of the Note [attached to and defined in the *Third Amended Counterclaim*], as of January 10, 2011,

5

> plaintiffs are indebted to Iberia in the total amount of $10,666,891.07 with continuing per diem interest owed thereon from and after January 10, 2011 until the sale of the real property and buildings securing the Note, together with additional costs and fees through the date of the sale of the [Property].

*Consent Judgment*, Doc. No. 143, pp. 1-2.

In approving the foreclosure sale of the Property, the Court found

> that, from January 10, 2011, the date referenced in this Court's January 27, 2011 Consent Judgment, to the date of the public sale, interest accrued on the judgment amount of $10,666,891.07 at the rate of 7.875% per annum, the rate provided for in the Note held by Iberia, for a total amount of $1,066,822.44 in interest through April 19, 2012.
>
> The Court further [found] that, after applying the credit bid obtained at the Special Master's sale, there remains a deficiency due to Iberia in the amount of $8,511,491.29 . . . , as to which Iberia is entitled to judgment against Plaintiffs/Counterclaim Defendants Thomas E. Parenteau, Marsha K. Parenteau and Thomas E. Parenteau, Successor Trustee of the 4500 Dublin Road Living Trust Dated April 8, 2003, with interest accruing on such judgment at the rate of 7.875% from April 19, 2012.

*Amended Order of Confirmation of Sale Nunc Pro Tunc*, Doc. No. 196, pp. 2-3.

IberiaBank asserts that it was injured by reason of the RICO violation in the amount of $8,511,491.29 plus interest accruing at the rate of 7.875% *per annum*. See *Motion for Award of Damages*, p. 3. The Court agrees with that assertion. The deficiency due under the Note represents the injury suffered by IberiaBank as a result of the improper procurement of, and subsequent default on, the Loan. Under the express terms of the Note, interest accrues at the rate of 7.875% *per annum* until the balance is paid in full. See *Adjustable Rate Note*, attached to *Third Amended Counterclaim* as Doc. No. 111-1.

6

Accordingly, IberiaBank has been injured in the amount of $9,255,226.41, that amount consisting of principal damages of $8,511,491.29 as previously determined by the Court, *see Amended Order of Confirmation of Sale Nunc Pro Tunc*, Doc. No. 196, pp. 2-3, plus interest in the amount of $743,735.12 based on the rate of 7.875% *per annum* from April 19, 2012 through the date of this *Report and Recommendation*.[2] This amount is properly trebled under the RICO statute, *see* 18 U.S.C. § 1964(c), resulting in damages in the amount of $27,765,679.23.[3]

IberiaBank is also entitled to recover "the cost of the suit, including a reasonable attorney's fee," under 18 U.S.C. § 1964(c). "It is well settled law that the 'lodestar' approach is the proper method for determining the amount of reasonable attorneys' fees." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986)). The lodestar approach multiplies the number of hours reasonably spent by a reasonable hourly rate. *Id*. (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). There is a "strong presumption" that this figure is a reasonable fee. *Id*. (quoting *Delaware Valley*, 478 U.S. at 565).

The *Second Affidavit of Albert J. Lucas in Support of IberiaBank's Motion for Award of Damages* ("*Second Lucas Affidavit*"), attached to the *Supplemental Affidavit* as Doc. No. 198-1, itemizes

---

[2] ($8,511,491.29 x .07875) ÷ 365 x 405(the number of days from April 19, 2012 through May 29, 2013) = $743,735.12. IberiaBank calculated interest of $504,571.84 through March 11, 2013. *See Motion for Award of Damages*, p. 3.
[3] $9,255,226.41 x 3 = $27,765,679.23

7

attorneys' fees in the amount of $30,721.00 for work related to the RICO claim in this matter. *Second Lucas Affidavit*, pp. 2-3. According to the *Second Lucas Affidavit*, attorney Albert Lucas billed 46.9 hours in connection with the RICO claim at an hourly rate of $520, attorney Ronald McMillan billed 4.7 hours at an hourly rate of $335, attorney Trevor Alexander billed 15.7 hours at an hourly rate of $265, and attorney Alexander Reich billed 2.6 hours at an hourly rate of $230. *Id*. at ¶¶ 2-7. The *Second Lucas Affidavit* provides that the hourly rates billed "in this matter are generally commensurate with other attorneys in this geographic region with comparable skills, education and experience." *Id*. at ¶ 10. The affidavit also avers that the number of hours billed is "both reasonable and necessary" and that the total amount billed "is a fair and reasonable amount." *Id*. at ¶¶ 11-12.

The *Affidavit of Albert J. Lucas* ("*First Lucas Affidavit*"), attached to *Motion for Award of Damages* as Doc. No. 193-1, and the invoices attached thereto as Exhibit B, establish that IberiaBank incurred costs of $2,433.96 in connection with the depositions of Thomas Parenteau, Marsha Parenteau, and Sartain. *Id*. These depositions were "necessary" to the preparation of IberiaBank's successful motion for summary judgment, *id*. at ¶¶ 2-3; *Defendant IberiaBank's Motion for Summary Judgment*, Doc. No. 183, Exhibits 1, 10, 12, which was granted on February 5, 2013. *See Opinion and Order*, Doc. No. 187.

Again, Thomas Parenteau and Sartain offer no contradictory evidence. The Court therefore concludes that IberiaBank is entitled

8

to reasonable attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(c), in the total amount of $33,154.96. *See also* 28 U.S.C. § 1920(2).

Finally, IberiaBank seeks punitive damages on its Ohio common law fraud claim in an amount equal to the deficiency as found by the Court plus interest accrued to date. *Motion for Award of Damages*, p. 6. Punitive damages may be awarded in connection with common law fraud claims. *Preston v. Murty*, 512 N.E.2d 1174, 1175 (Ohio 1987) (citing *Roberts v. Mason*, 10 Ohio St. 277, syllabus ¶ 1 (Ohio 1859)). Under O.R.C. § 2315.21, punitive damages are recoverable if "(1) the defendant acted with either malice or aggravated or egregious fraud and (2) the trier of fact awards the plaintiff compensatory damages." *Niskanen v. Giant Eagle, Inc.*, 912 N.E.2d 595, 599 (Ohio 2009) (citing O.R.C. § 2315.21(C)). A claimant seeking such damages must establish, in addition to the *prima facie* elements of fraud, "that the fraud is aggravated by the existence of malice or ill-will, or must demonstrate that the wrongdoing is particularly gross or egregious." *Charles R. Combs Trucking, Inc. v. Int'l Harvestor Co.*, 466 N.E.2d 883, syllabus ¶ 3 (Ohio 1984). The party seeking punitive damages bears the burden of proving its entitlement to such damages by clear and convincing evidence. O.R.C. § 2315.21(D)(4).[4]

---

[4] Ohio law also limits the amount of punitive damages that can be awarded against an individual, O.R.C. § 2315.21(D)(2), except "when the defendant has been convicted of . . . a criminal offense that is a felony, that had as an element of the offense one of more of the culpable mental states of purposely and knowingly. . ., and that is the basis of the tort action." O.R.C. § 2315.21(D)(6). Ohio courts assessing an award of punitive damages must apply the principles of reasonableness and proportionality articulated in *BMW v. Gore*, 517 U.S. 559 (1996). *Barnes v. University Hospitals of Cleveland*, 893 N.E. 2d 142 (Ohio 2008), ¶ 40.

9

The Court has determined that Thomas Parenteau, Marsha Parenteau, Sartain, and others "'engaged in a lucrative mortgage fraud scheme'" devised by Thomas Parenteau. *Opinion and Order*, Doc. No. 187, pp. 2-3 (quoting *United States v. Parenteau*, No. 12-3015, 2012 WL 5896561, at *1 (6th Cir. 2012)). "Part of Tom Parenteau's scheme entailed the . . . [Loan] that gave rise to the present civil lawsuit." *Id*. Criminal proceedings relating to the scheme and the Loan application were brought against Thomas Parenteau, Marsha Parenteau, and Sartain, and all three were convicted of conspiracy to commit money laundering in connection with the Loan application, in violation of 18 U.S.C. § 1956(h). The fraud perpetrated was, in the Court's opinion, nothing less than egregious. Moreover, and as discussed *supra*, IberiaBank has suffered economic injury as a result of the egregious fraudulent scheme perpetrated by Thomas Parenteau and Sartain.

Nevertheless, the Court concludes that punitive damages are not necessary in this case to accomplish the twin aims of punitive damages, *i.e.*, punishment and deterrence. *See Arbino v. Johnson & Johnson*, 880 N.E.2d 420, 441 (Ohio 1994) ("'The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct.'") (quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 635 N.E.2d 331 (Ohio 1994)). Thomas Parenteau was sentenced to 240 months' imprisonment, *see United States v. Thomas Parenteau*, Case No. 2:08-cr-180(1) (S.D. Ohio 2008), and Sartain was sentenced to 120 months' imprisonment, *see United States v. Dennis Sartain*, Case No. 2:08-cr-180(2) (S.D. Ohio 2008), for conspiracy to commit money laundering in connection with the Loan application. IberiaBank's

damages resulting from the fraud, *i.e.*, the deficiency due under the Note, are identical to the damages resulting from the RICO violation. As discussed *supra*, the Court has already recommended that those damages be trebled.  Considering that recommendation and the terms of imprisonment already imposed on Thomas Parenteau and Sartain, the Court concludes that punitive damages are not necessary to adequately punish Thomas Parenteau or Sartain or to deter them or any other person from engaging in similar misconduct in the future. Accordingly, the Court recommends that IberiaBank's motion, as it relates to a claim for punitive damages, be denied.

Based on the foregoing, it is **RECOMMENDED** that IberiaBank's *Motion for Award of Damages*, Doc. No. 193, be **GRANTED** in part and **DENIED** in part.

It is **RECOMMENDED** that IberiaBank be **AWARDED** $ 27,765,679.23 in actual and treble damages plus $ 33,154.96 in attorneys' fees and costs, for a total award of $ 27,798,834.19. It is **FURTHER RECOMMENDED** that, as it relates to the claim for punitive damages, the motion be denied.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

May 29, 2013                                    *s/Norah McCann King*
                                                Norah M<sup>c</sup>Cann King
                                       United States Magistrate Judge